```
                   UNITED STATES DISTRICT COURT
                   EASTERN DISTRICT OF MISSOURI
                         EASTERN DIVISION
```

UNITED STATES OF AMERICA,   )
                            )
         Plaintiff,         )
                            )
    v.                      )    No. 4:04CR572 JCH
                            )              (FRB)
ROBIN YVETTE ROBINSON,      )
                            )
         Defendant.         )

**MEMORANDUM,
REPORT AND RECOMMENDATION
<u>OF UNITED STATES MAGISTRATE JUDGE</u>**

All pretrial motions in the above cause were referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b).

<u>Defendant's Motion To Suppress Contents Of Any And All Electronic Surveillance</u> (Docket No. 215)

Testimony and evidence was adduced on the defendant's motion at a hearing on February 9, 2005. From the testimony and evidence adduced at the hearing the undersigned makes the following findings of fact and conclusions of law:

<u>Findings of Fact</u>

The evidence adduced at the evidentiary hearing shows that the government conducted court ordered electronic surveillance during the investigation of the matters alleged in the indictment. The government intends to offer in evidence at trial conversations of the defendant which were intercepted and recorded during such surveillance.

On April 21, 2004, Assistant United States Attorney Sam C. Bertolet appeared before United States District Judge Rodney W. Sippel and made an application for interception of wire communications over telephone number (314) 479-1258. (See Government's Exhibit 1-1.) The application was accompanied by and referred to an affidavit of Special Agent Richard D. Wagner, of the Drug Enforcement Administration (DEA), which was also signed and sworn before Judge Sippel on April 21, 2004. (See Government's Exhibit 1-2.) Agent Wagner's affidavit established that he was investigating several persons, including the defendant Robin Yvette Robinson for distribution of cocaine and heroin in violation of various federal laws. The affidavit indicated that the communications of those individuals were expected to be intercepted on telephone number (314) 479-1258 which was subscribed to by Maria Teresa Taca, another of the persons under investigation. The communications expected to be intercepted and sought to be intercepted concerned the specifics of the narcotics distribution ring, including the organization's methods and extent of operations, the identification of accomplices and co-conspirators, the location of points and times of distribution, and the manner in which proceeds of distribution activities were being stored and transferred.

The affidavit set out that the DEA had received information from three separate confidential sources involving the activities of the persons named above in the distribution of

controlled substances.  Two of the confidential sources had been involved with some named subjects of the investigation through the purchase of controlled substances.  The affidavit set out the nature of the relationship between the confidential sources and the subjects, and described transactions and conversations that occurred between the subjects and confidential sources during which the distribution of drugs or related matters were carried on or discussed.  The affidavit also described related law enforcement activities which had corroborated or confirmed information provided by the informants.  The affidavit also described that court ordered pen register surveillance had been conducted on the telephone for which the wiretap order was being sought, and that information gathered through the use of the pen registers, described in detail in the affidavit, showed extensive contacts between the subjects using the described telephone.

Lastly, the affidavit explained why the wiretap was needed and the reasons why alternative investigative techniques had not been, or were not likely to be, successful in determining the scope of the organization's activities, their methods of operations or in identifying sources of drugs and other co-conspirators.  The affidavit explained that the activities were spread over a wide geographic area making surveillance difficult.  Further, counter-surveillance activity had been conducted by some subjects, and the subjects had detected the presence of surveillance.  Although confidential sources had provided information, they were unaware of the full scope of the members or methods of the organization.

Undercover agents had not been introduced into the investigation because it was unlikely that they could infiltrate upper levels of the organization. Investigating officers had been unable to develop probable cause for search warrants because they had insufficient information as to specific locations where drugs were delivered or kept. Further, execution of search warrants might alert the organization to the investigation and cause the destruction of evidence. Pen register information revealed contacts between the subjects but provided no information on the subject matter of those contacts.

On April 21, 2004, Judge Sippel signed the order authorizing the interception of wire communications over telephone number (314) 479-1258. (See Government's Exhibit 1-3.) The order states that the Court had found there was probable cause to believe that the listed individuals were committing violations of 21 U.S.C. 841(a)(1), 843(b), 846 and Title 18 U.S.C. §§ 1956 and 1957; that the telephone listed was being used in connection with the commission of those offenses; and that communications concerning the offenses were likely to be intercepted. The order also noted that normal investigative techniques had been tried and had failed, reasonably appeared to be unlikely to succeed if tried; and were too dangerous to be employed. The order authorized the wiretap interception for thirty (30) days.

On May 25, 2004, Assistant United States Attorney John T. Davis appeared before United States District Judge Catherine D. Perry and made an application for Continued Interception of Wire

Communications over telephone number (314) 479-1258. (See Government's Exhibit 1-10). The application was again accompanied by and referred to an affidavit of DEA Special Agent Richard D. Wagner. The affidavit incorporated the information set out in Agent Wagner's previous affidavit accompanying the first application. The affidavit set out some of the information learned as a result of the first 30 day interception period. The affidavit noted that the information learned during the first interception had been helpful but that it had not revealed the entire scope of the organization and its activities. (See Government's Exhibit 1-11).

On May 25, 2004, Judge Perry signed the order authorizing the continued interception of wire communications over telephone number (314) 479-1258. (See Government's Exhibit 1-12). The Order states that the Court found that there was probable cause to believe that the listed individuals were committing violations of 21 U.S.C. §§ 841(a)(1), 843(b), 846 and 18 U.S.C. §§ 1956 and 1957; that the telephone listed was being used in connection with the commission of those offenses; and that communications concerning the offenses were likely to be intercepted. The order again noted that normal investigative techniques had been tried and failed, reasonably appeared to be unlikely to succeed if tried, or were too dangerous to be employed. The Order authorized the continued wiretap interception for 30 days.

On June 10, 2004, Assistant United States Attorney John T. Davis appeared before United States District Judge Rodney W.

Sippel and made an application for interception of wire communications over telephone number (314) 283-2828. (See Government's Exhibit 2-1.) The application was accompanied by and referred to an affidavit of Special Agent Richard D. Wagner, of the Drug Enforcement Administration (DEA), which was also signed and sworn before Judge Sippel on June 10, 2004. (See Government's Exhibit 2-2.) Agent Wagner's affidavit established that he was investigating several persons, including Donnell Robinson, for distribution of cocaine and heroin in violation of various federal laws. The affidavit indicated that the communications of those individuals were expected to be intercepted on telephone number (314) 283-2828 which investigation showed had been used by Donnell Robinson in the distribution of controlled substances. The communications expected to be intercepted and sought to be intercepted concerned the specifics of the narcotics distribution ring, including the organization's methods and extent of operations, the identification of accomplices and co-conspirators, the location of points and times of distribution, and the manner in which proceeds of distribution activities were being stored and transferred.

The affidavit set out the details of the DEA investigation outlined in the affidavits submitted in support of the previous applications described above. (See Government's Exhibit 1-2 and 1-11.) The affidavit described several conversations intercepted on the previously authorized wiretaps in which arrangements were made by Donnell Robinson for the

distribution of cocaine and heroin to others in the organization using the telephone to which this application was addressed.  The affidavit also described that court ordered pen register surveillance had been conducted on the telephone for which the wiretap order was being sought, and that information gathered through the use of the pen registers, described in detail in the affidavit, showed extensive contacts between the subjects using the described telephone.

Lastly, the affidavit explained why the wiretap was needed and the reasons why alternative investigative techniques had not been, or were not likely to be, successful in determining the scope of the organization's activities, their methods of operations or in identifying sources of drugs and other co-conspirators.  The affidavit explained that the activities were spread over a wide geographic area making surveillance difficult.  Further, counter-surveillance activity had been conducted by some subjects, and the subjects had detected the presence of surveillance.  Although confidential sources had provided information, they were unaware of the full scope of the members or methods of the organization.  Undercover agents had not been introduced into the investigation because it was unlikely that they could infiltrate upper levels of the organization.  Investigating officers had been unable to develop probable cause for search warrants because they had insufficient information as to specific locations where drugs were delivered or kept. Further, execution of search warrants might alert the organization to the investigation and cause the

destruction of evidence.  Pen register information revealed contacts between the subjects but provided no information on the subject matter of those contacts.  Although previous interceptions had identified Donnell Robinson as a member of the distribution organization, it did not reveal information regarding his sources of narcotics or of the location of "safe houses" used by Robinson, or of his money laundering techniques.

On June 10, 2004, Judge Sippel signed the order authorizing the interception of wire communications over telephone number (314) 283-2828.  (See Government's Exhibit 2-3.)  The order states that the Court had found there was probable cause to believe that the listed individuals were committing violations of 21 U.S.C. 841(a)(1), 843(b), 846 and Title 18 U.S.C. §§ 1956 and 1957; that the telephone listed was being used in connection with the commission of those offenses; and that communications concerning the offenses were likely to be intercepted.  The order also noted that normal investigative techniques had been tried and had failed, reasonably appeared to be unlikely to succeed if tried; and were too dangerous to be employed.  The order authorized the wiretap interception for thirty (30) days.

## Discussion

In her motion the defendant makes general references to various requirements set out in federal statues relating to the interception of wire and oral communications.  See 18 U.S.C. §§ 2510 et. seq.  She specifically avers that the government in the instant case did not adequately comply with 18 U.S.C. § 2518(1)(c),

requiring that each application for interception of oral communications shall set forth "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous". She also avers that the type of interception utilized by the government in this case went beyond the scope of the application (and presumably order of the court) apparently claiming that conversations were overheard and intercepted beyond those of the type sought to be intercepted by the application and as ordered by the court.

Title III of the Omnibus Crime Control and Safe Streets Act of 1968, codified at 18 U.S.C. §§ 2510, et seq., provides for the interception of wire, oral and electronic communications under certain circumstances. Under that statute, an order for electronic surveillance may be entered by a United States District Judge upon the application of a federal law enforcement officer who has been authorized to make such application by the United States Attorney General or her authorized designee. An authorization for such an application is presumed to be valid unless the person challenging the application makes a prima facie showing that it was not so authorized. See United States v. O'Connell, 841 F.2d 1408, 1416 (8th Cir.), cert. denied, 487 U.S. 1210 (1988) and 488 U.S. 1011 (1989). The application must include a full and complete description of the facts relied upon, including details of the alleged offense; description of the facilities where the communications are to be intercepted; description of the

communications sought to be intercepted; the identity of the persons whose communications will be intercepted; whether other investigative procedures have been tried; and the period of time for which the interception is requested. The application must also indicate whether previous applications involving the same facilities, persons or places have been made. 18 U.S.C. § 2518(1). The application here contained all of the statutorily required elements: it was made by an Assistant United States Attorney; contained an authorization from an Assistant Attorney General designated to make such authorization; and included the identifying items regarding the persons, places and communications sought to be intercepted. It also indicated that it sought to intercept communications for no more than thirty (30) days. There was no error in the form of the application.

Under 18 U.S.C. § 2518(3), the court may issue the order only if it finds probable cause to believe that (1) a person is committing one of the crimes enumerated in 18 U.S.C. § 2516, (2) communications concerning such an offense will be obtained through interception, and (3) the place where the communications are to be intercepted is being used in connection with the commission of such an offense. The court must also find that normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or they appear to be too dangerous. In order to find that normal investigative techniques are inadequate, the court need not find that the government has

exhausted every conceivable normal investigative technique. 18 U.S.C. 2518(1)(c).

Here the applications and affidavits provided in support of the wiretaps provided an ample basis for the finding of probable cause to issue the wiretap order. The affidavits provided detailed information obtained from reliable confidential sources, surveillance by law enforcement officials, other law enforcement techniques, and pen registers indicating that the persons using the subject wire communication facilities were engaged in violations of the controlled substances laws were using the specified telephones as part of their narcotics distribution activities. There was probable cause to believe that the crimes were being committed, that the subject telephones were being used for the commission of those crimes, and that the intercepts were likely to result in the interception of communications involving the criminal activity. Thus, there was an ample basis for the finding of probable cause.

Under 18 U.S.C. § 2518(4), the order must specify the identity of the person whose communications are to be intercepted, the nature and location of the communication facilities where the intercept is granted, the type of communications to be intercepted, the identity of the agency and of the person performing the interception, and the period of time during which the interception is authorized. The period of time may be longer than thirty (30) days. 18 U.S.C. § 2518(5). Each of the orders here fully complied with this requirement.

The defendant's main argument for suppression of the wiretap evidence is that the affidavit of Agent Wagner fails to meet the so-called necessity requirement of 18 U.S.C. § 2518(1)(c) that normal investigative procedures have been tried and failed or appear unlikely to succeed or are too dangerous.

> [T]he necessity requirement of section 2518 was meant to insure that wiretaps are not routinely employed as the initial step in an investigation. Thus, while the statute does require that normal investigative procedures be used first, it does not require that law enforcement officers exhaust all possible techniques before applying for a wiretap. The government is simply not required to use a wiretap only as a last resort. Whether the statutory requirement is met is to be determined by the issuing judge in a commonsense manner . . .

United States v. Macklin, 902 F.2d 1320, 1326-27 (8th Cir. 1990), cert. denied 498 U.S. 1031 (1991). Here, the wiretap was not used as the initial step in the investigation. The affidavit described various techniques used by law enforcement officials to gather evidence in the case. Although some of these techniques had developed some evidence, "Even if conventional techniques have been somewhat successful . . . a wiretap may still be authorized." United States v. Maxwell, 25 F.3d 1389, 1394 (8th Cir. 1994). The affidavit described why some investigative techniques had failed or why they would be of no value. The affidavit further described that the use of various techniques had failed to fully reveal the full scope of the conspiracy, its complete membership and methods

of operation.  This is sufficient to meet the necessity requirement.  United States v. Thompson, 210 F.3d 855, 858-59 (8th Cir. 2000).

18 U.S.C. § 2518(5) imposes a duty on the government to conduct the surveillance in a way to ensure that unauthorized interceptions will be minimized.  Whether the government complied with those requirements is determined by an objective reasonableness standard.  United States v. Williams, 109 F.3d 502, 507 (8th Cir. 1997).  The burden is upon the defendant to show that the government did not meet the minimization requirements.  United States v. Garcia, 785 F.2d 214, 221-22 (8th Cir.), cert. denied, sub. nom. Barker v. United States, 475 U.S. 1143 (1986); United States v. Giacalone, 853 F.2d 470, 482 (6th Cir. 1988).  The defendant has offered no evidence that the government did not meet the minimization requirement.  At the hearing the government offered evidence that extensive efforts were made to comply with those requirements.  Before monitoring began an Assistant United States Attorney provided the agents with detailed directions both orally and in writing as to proper minimization procedures.  Each monitoring agent had to read these procedures and sign a statement stating that he read and understood the minimization procedures. (See Government's Exhibit 1-4.)  Agent Wagner testified that each agent read and understood the minimization procedures, and that the minimization procedures were implemented at all stages of the wiretap by all agents.  Thus, the evidence here shows that agents

made objectively reasonably efforts to minimize all unauthorized communications, and the interceptions were therefore lawful.

## Conclusion

For all of the foregoing reasons the Defendant's Motion To Suppress Contents Of Any And All Electronic Surveillance should be denied.

Accordingly,

**IT IS HEREBY RECOMMENDED** that Defendant's Motion To Suppress Contents Of Any And All Electronic Surveillance (Docket No. 215) be denied.

The parties are advised that they have eleven (11) days in which to file written objections to this Report and Recommendation. Failure to timely file objections may result in waiver of the right to appeal questions of fact. Thompson v. Nix, 897 F.2d 356, 357 (8th Cir. 1990).

/s/ Frederick R. Buckles
UNITED STATES MAGISTRATE JUDGE

Dated this 29th day of January, 2007.